## SKETCH/AREA TABLE ADDENDUM



**As Is Buildings**

Siegle & Associates, LLC

| | |
|---|---|
| **Canopy:** | None |

**Roof System:** The existing roof is a flat, built up roof. The proposed roof is also of the same construction. The architect did not furnish the appraiser with roof construction details; however, it is assumed that it is a rubber membrane roof that is ballasted.

Water drainage for the existing building is via aluminum gutters and downspouts, while the proposed building will have roof sumps with scuppers handling the water overflow.

**Windows:** Existing windows are insulated glass in aluminum frames. The proposed windows are bronze anodized aluminum frame windows supporting 1" insulated glass windows with a glazing. Plate glass in aluminum frames are located along the building entrances where required by code.

**Doors:** Emergency exit doors are assumed to be 3' x 7' insulated, hollow core metal in pre-finished metal frames. Interior restroom doors are assumed to be 3 x 6' solid core wood doors in assumed metal ready frames. Front entrance doors are insulated plate glass in bronze anodized aluminum frames.

**Wall Finish:** The architect did not furnish the appraiser with interior build out detail. However, based on discussions with the architect, the interior walls will be painted drywall and washable wall board for the food preparation area for the first floor tenant. Interior walls are assumed to be partitioned by way of metal studs.

The existing buildings appear to have painted drywall/plaster as well as painted block.

**Floors:** Commercial grade carpeting and ceramic tile as represented by the architect for the proposed building. The existing floor coverings are primarily vinyl composition tile floors and exposed concrete.

**Ceilings:** No ceiling detail was provided by the architect; however, it is assumed that the proposed addition will have acoustical tile ceiling and fluorescent lighting in a metal grid system.

The existing structures also have a tiled ceiling and fluorescent lighting but of a lesser quality construction.

## Mechanical Description:

| | |
|---|---|
| Plumbing: | Two, two-fixture restrooms and a 50 gallon hot water tank for the proposed addition. The existing buildings have one, two-fixture restroom in each building. |
| HVAC: | Packaged, roof top units for the existing, as well as proposed buildings. From the appraiser's read of the HVAC plans, it appears that the building will have one or two, five-ton HVAC units. |
| Sprinkler System: | None for the existing and proposed. |
| Electrical: | Electrical appears adequate and will be to code and adequate for the new construction. From the appraiser's read of the plans, the first floor occupant will have 200 amps as will the second floor occupant. |
| Elevator: | The proposed building is not to have an elevator per the architect. However, this would not be ADA compliant for second floor occupancy as office. The appraiser has assumed by way of an extraordinary assumption that an elevator will be required for occupancy on the second floor and the cost of an assumed elevator will be included in the Cost Approach and assumed within the Sales Comparison and Income Approaches. |

The subject's proposed construction is to include two stairwells of metal framing with pre-cast concrete steps.

54

# Highest and Best Use Analysis

According to the Appraisal of Real Estate, " Highest and best use may be defined as the reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value".

There are three general steps involved in determining the highest and best use. These are defined as follows:

➢ Estimate the highest and best use as though vacant

➢ Determine the ideal improvement

➢ Verify the highest and best us as improved

There are four steps within highest and best use of the site as though vacant and the highest and best use as improved. These are defined as follows:

➢ Legal permissibility test
➢ Physical possibility test
➢ Financial feasibility test
➢ Maximally productive test

## Legal Permissibility Test

Legal permissibility is the first step in a four-step process of determining the highest and best use of the site as though vacant.

The site is zoned as BB, Community Business according to the municipality's zoning map. A retail use – existing and proposed retail/office are legally permissible uses in this zoning category.

## Physical Possibility Test

The second step is to determine if it is physically possible to construct an improvement on the site that is compatible with the legal permissibility of the site.

The site is rectangular in shape and has sufficient frontage and depth. The accessibility is from two roads – Reuter and W. Warren, since the subject is a corner property. Further, the site does not contain wetlands that the appraiser is aware of nor is the site in a flood zone. The topography is level and all utilities are available. Therefore, it is physically possible to construct site and building improvements.

55

Siegle & Associates, LLC

## Financial Feasibility Test

The third test for the highest and best use as improved is the financial feasibility test. This test assists in determining if commercial development would provide an adequate return. A retail use is a financially feasible use, based on the appraiser's analysis as is further explained in the Income Approach with rental rates comparable thereto in the mid to upper $20's PSF.

## Maximally Productive Use

This is the last step in determining the highest and best use of the site as vacant. Maximally productive means that the property or type of category of property type that results in the highest present value or return to the land is the most appropriate use for the subject. The subject's maximally productive use is to construct a retail building. The site is a corner in a built up area with very little land available for development. With rental rates hovering at or above $20 PSF for retail, the ideal improvement is to construct a retail building larger than existing.

## Highest and Best Use as Though Vacant – Conclusion

The only use of the site that is maximally productive is for a small retail use. This use is complimentary and compatible with the neighborhood and zoning permits such use. Further, rental rates of $20 + more than justifies economic feasibility.

## Highest and Best Use As Improved

The first step in highest and best use is to estimate the highest and best use of the site as though vacant. The second step is to determine the ideal improvement. The third and last step is to determine the highest and best use as improved.

This final step compares the existing improvement with the ideal improvement. From this comparison, a decision is made as to whether to leave the existing improvements as they are or change the improvements. Change could be in the form of demolition, remodeling, renovation, or conversion to an alternate use.

The ideal improvement would be to construct a retail building of an average to good class C construction. The existing use is average for the area; however, is well suited for a corner, high profile property. The ideal improvement could easily vary from a use similar use to a mixed use – retail/office, taking advantage of the site's frontage and two streets that have ingress/egress.

## Legal Permissibility Test

There are no unusual easements that adversely impact the subject other than typical utility easements that the appraiser is aware of. Based on the appraiser's review of the zoning ordinance, the subject would be considered legal conforming in its "as is" state. It is assumed by way of an extraordinary assumption, that the subject's site plan and appropriate approval have or will be granted permitting the proposed development. Therefore, it is assumed that the proposed use is legally permissible.

## Physical Possibility Test

The subject improvements were built in 1936/1937. The subject building and site improvements have received average maintenance, and no significant items of deferred maintenance were noted. By virtue of the presence of the site and building improvements, the subject site as improved meets the physical possibility test. No evidence of any adverse settlement on the site is noted.

## Financial Feasibility Test

If the subject were leased, it would provide a sufficient level of income to pay expenses and result in a sufficient return to satisfy investor return criteria, based on the value concluded within this report. Therefore, the financial feasibility test would be met.

Siegle & Associates, LLC

## Maximally Productive

This is the last step in determining the highest and best use of the site as vacant. Maximally productive means that the property type or category of property that results in the highest present value to the land, is the most appropriate use for the subject.

Presently, it is feasible to demolish the subject improvements since the site is underutilized with its high land-to-building ratio. Remodeling/renovation may also be a feasible option.

An addition is a possibility, due to the land-to-building ratio and floor area ratio restrictions which appear to permit a larger building structure. Conversion to an alternate use at this time is not recommended, due to zoning requirement restrictions. However, the commercial zoning permits a wide variety of uses and it is not inconceivable that a number of uses could be permitted.

Based on the concluded market value of $1,130,000 for the prospective market value and the land value of $205,000, the subject's overall value exceeds that of the land value – even in its as is condition, the market value of $250,000 exceeds that of the land value. In other words, the existing improvements contribute value. However, the highest and best use as improved is to construct a larger building either by way of demolishing the existing building or by way of an addition.

Siegle & Associates, LLC

# Sales Comparison Approach – As Is

Principles involved in the sales comparison approach include supply and demand, substitution, balance, and externalities.

The general procedure in the sales comparison approach is as follows:

➤ Research the market for information on sale transactions, listings, pending sales, etc.
➤ Verify the information
➤ Select relevant units of comparison
➤ Compare the comparable properties to the subject and make adjustments for elements of comparison
➤ Reconcile the value indications into a single value or range of values

The following sales have been identified and are deemed most comparable to the subject after an extensive search. The scope of work involved an exhaustive search utilizing Co-Star Comps and Property for all of Wayne, Oakland, and Macomb County for newer, comparable buildings like the subject. Additional research involved a physical visit by an associate of the appraiser to the Oakland County Assessor's office with permission to view all of their sales books for all of Oakland County. Stops were also made at the city of Waterford, Keego Harbor, Clarkston, and other neighboring assessor offices. Additional search efforts involved contacting several, third party appraisers, as well as a search on MIREALSOURCE and RealcompII online. The following sales are the best available.

## IMPROVED SALES SUMMARY TABLE

| No. | Location | Sale Date | Price | Building Size (SF) | Price/ SF |
|---|---|---|---|---|---|
| 1. | 7845 Wyoming | 10/03 | $490,000 | 5,375 | $91.16 |
| 2. | 6500-6512 Schaefer | 04/04 | $700,000 | 9,066 | $77.21 |
| 3. | 13901 Michigan Avenue | 01/03 | $385,000 | 4,428 | $86.95 |
| 4. | 15238-15242 W. Warren | 08/04 | $500,000 | 3,427 | $145.90 |

Siegle & Associates, LLC

Improved Sale No. 1



**Property Identification**

| | |
|---|---|
| Record ID | 543 |
| Property Type | Retail, Retail |
| Address | 7845 Wyoming, Dearborn, Wayne County, Michigan |
| Tax ID | 32-10-054-12-016 |

**Sale Data**

| | |
|---|---|
| Grantor | The Islamic Mosque of America |
| Grantee | Wyoming Star Plaza, LLC |
| Sale Date | October 09, 2003 |
| Property Rights | Fee simple |
| Conditions of Sale | Arm's length |
| Financing | Conventional |
| Verification | City records; Sam Baydoun, Century 21 |

| | |
|---|---|
| Sale Price | $490,000 |

**Land Data**

| | |
|---|---|
| Land Size | 0.275 Acres or 12,000 SF |
| Front Footage | 120 ft Total Frontage: 120 ft Wyoming |
| Topography | Level |
| Utilities | All |
| Shape | Rectangular |

61

Parking                                        22 spaces

**General Physical Data**
Building Type                                  Single Tenant
Gross SF                                        5,375
Year                                            1948
Construction Type                              BV/Block
Roof Type                                       Flat, built up
Foundation                                      Reinf. conc.
Stories                                         1
Condition                                       Average

**Indicators**
Sale Price/Gross SF                            $91.16
Floor Area Ratio                               0.45
Land to Building Ratio                         2.23:1

**Remarks**
This property is now on the market for $459,900 or $85.56 PSF.

Municipal records indicate that Wyoming Star sold the property to Nabatieh Properties on December 3, 2004 for $1 (liber/page 41802/0469). Another sale occurred on October 17, 2003 from Victor Haddad to Sayel El-Katat for $340,000. A mortgage document recorded or dated the same day - October 17, 2003 indicated a price of $490,000 (liber 39325/page 25 - the same figure as stated by Co-Star). Co-Star reported that a mortgage was made by Fifth Third Bank for $345,000 with seller financing for an additional $140,000. The transaction reported by Co-Star is between El-Katat (The Islamic Mosque of America) and Wyoming Star Plaza, LLC.

62

Improved Sale No. 2



**Property Identification**

| | |
|---|---|
| Record ID | 544 |
| Property Type | Retail, Retail |
| Address | 6500-6512 Schaefer, Dearborn, Wayne County, Michigan |
| Tax ID | 82-10-081-25-001, 17-007 |

**Sale Data**

| | |
|---|---|
| Grantor | Sleiman & Fadwat Saad |
| Grantee | Rami Chahine |
| Sale Date | April 02, 2004 |
| Deed Book/Page | 40693/113 |
| Property Rights | Fee simple |
| Marketing Time | 90 days |
| Conditions of Sale | Arm's length |
| Financing | Conventional |
| Sale History | $427,500 on 10/24/2003 L/P 399321/1607 |
| Verification | Gloria, Century 21 Curran & Christie; 313.565.1000, May 26, 2006; Co-Star, Other sources: RealcompII |

| | |
|---|---|
| Sale Price | $700,000 |

**Land Data**

| | |
|---|---|
| Land Size | 0.382 Acres or 16,624 SF |

63

| | |
|---|---|
| Front Footage | 80 ft Total Frontage: 80 ft Schaefer |
| Topography | Level |
| Utilities | All |
| Shape | Rectangular |
| Parking | 18 parking spaces |

**General Physical Data**

| | |
|---|---|
| Building Type | Single Tenant |
| Gross SF | 9,066 |

| | |
|---|---|
| Construction Type | BV/Block |
| Roof Type | Flat, built up |
| Foundation | Reinf. conc. |
| Stories | 1 |
| Condition | Average |

**Indicators**

| | |
|---|---|
| Sale Price/Gross SF | $77.21 |
| Floor Area Ratio | 0.00 |

**Remarks**

The sale price was confirmed by a review of the warranty deed at the city offices, as well as per Gloria the market researcher/administrator for Century 21 Curran & Christie.

The sale reportedly included the N. 18' of lot 57 & lots 58 to 63 of Robert Oakmans Oakman Blvd. & Schaefer Avenue Subdivision.

64

Improved Sale No. 3



**Property Identification**

| | |
|---|---|
| Record ID | 545 |
| Property Type | Retail, Retail |
| Property Name | Dearborn Billiards & Cafe |
| Address | 13901 Michigan Avenue, Dearborn, Wayne County, Michigan |
| Tax ID | 32-10-184-05-015 |

**Sale Data**

| | |
|---|---|
| Grantor | Robert J & Lorraine J. Gursky |
| Grantee | Mohamed K & Mirna Awada |
| Sale Date | January 21, 2003 |
| Deed Book/Page | 42326/0454 |
| Property Rights | Fee simple |
| Conditions of Sale | Arm's length |
| Financing | Land contract |
| Verification | Siadia, Century 21 Curran & Johnson; 313.278.2900, January 21, 2003; City records (PRD) |

| | |
|---|---|
| Sale Price | $385,000 |

**Land Data**

| | |
|---|---|
| Land Size | 0.129 Acres or 5,600 SF |
| Front Footage | 56 ft Total Frontage: 56 ft Michigan Avenue |

65

---

Siegle & Associates, LLC

| | |
|---|---|
| Topography | Level |
| Utilities | All |
| Shape | Rectangular |
| Parking | 6 spaces |

**General Physical Data**

| | |
|---|---|
| Building Type | Single Tenant |
| Gross SF | 4,428 |

| | |
|---|---|
| Construction Type | BV/Block |
| Roof Type | Flat, built up |
| Foundation | Reinf. conc. |
| Stories | 1 |
| Year Built | 1955 |
| Condition | Average |

**Indicators**

| | |
|---|---|
| Sale Price/Gross SF | $86.95 |
| Floor Area Ratio | 0.00 |

**Remarks**

The land contract was entered into on January 21, 2003 and fulfilled on March 21, 2005. The payments were $2,696.46 per month for 6 months. At that time, a balloon payment of $25,000 is to be made. After 2 years, a balloon payment is required to pay off the balance.

Siegle & Associates, LLC

Improved Sale No. 4



**Property Identification**

Record ID                546
Property Type            Retail, Retail
Address                  15238-15242 W. Warren, Dearborn, Wayne County, Michigan
Tax ID                   32-10-063-31-012

**Sale Data**

Grantor                  Mohammad H. & Ahiam Mandoouh
Grantee                  Bilal Sleiman Saad
Sale Date                August 13, 2004
Deed Book/Page           41542/1627
Property Rights          Fee simple
Conditions of Sale       Arm's length
Financing                Conventional
Verification             City records (PRD); Co-Star

Sale Price               $500,000

**Land Data**

Land Size                0.100 Acres or 4,350 SF
Front Footage            44 ft Total Frontage: 44 ft Warren
Topography               Level
Utilities                All

67

Shape                           Rectangular
Parking                         4 spaces

General Physical Data
Building Type                   Single Tenant
Gross SF                        3,427

Construction Type               BV/Block
Roof Type                       Flat, built up
Foundation                      Reinf. conc.
Stories                         1
Year Built                      1941
Condition                       Average

Indicators
Sale Price/Gross SF             $145.90
Floor Area Ratio                0.00

68

## Sales Comparable Map



Siegle & Associates, LLC

Adjustments are applied to sales for comparison to the subject. The following adjustments are applied within the sales adjustment grids:

➢ Buyer expenditures immediately after the sale

➢ Property rights conveyed

➢ Conditions of sale

➢ Market conditions

➢ Location

➢ Construction Quality

➢ Age & Condition

➢ Number of Stories

➢ Building Size

➢ Land-to-building ratio

The first four adjustments after buyer expenditures – property rights conveyed, financing, conditions of sale, and market conditions – are cumulative adjustments. Cumulative adjustments are compounded adjustments, based on the adjusted per unit measurement. The remaining adjustments are additive. This means that positive and negative adjustments are added and the net percentage is multiplied by the adjusted price, which is after property rights, financing, conditions of sale, and market conditions.

**Buyer expenditures** – The appraiser is not aware that expenditures were involved immediately upon sale.

**Property rights conveyed** – Property rights adjustments are adjustments made to sales for fee simple or leased fee sales. A sale of a fee simple interest indicates that a property does not have leases in place. Leases may impact the price a purchaser pays for property. A purchaser might pay more for a property if a lease payment is higher than what the property owner could achieve by renting the property in the open market. Also, capitalization rates may be lower, based on existing income if the purchaser believes that the market is a rising market or rental increase potential is strong. All four sales are of the fee simple interest. No property rights adjustments are necessary.

70

**Financing** – Financing adjustments are adjustments usually made to sales for favorable financing or other concessions offered by the seller. If a seller offers an interest rate or other concession that is better than what a purchaser could obtain from a lending institution or other typical source of financing, the price paid for the property could be impacted. A purchaser might be inclined to pay more for a property than would typically be paid if, for example, the seller offered the purchaser a below market interest rate. None of the sales involved any form of atypical financing that the appraiser is aware of. All appear to have involved conventional bank financing.

**Conditions of Sale** – Conditions of sale adjustments consist of abnormal or unusual motivations for acquiring property that may influence the price paid. To the best of the appraiser's knowledge, none of the sales involved any unusual conditions that would have impacted price paid such as a distressed or forced sale.

**Market Conditions Adjustments** – Market conditions adjustments are changes in the price paid for property, due to factors, such as changes in supply and demand. These factors are influenced by current and forecasted interest rates, economic conditions, changes in demographics, for example.

One way of determining market conditions adjustments is to examine a sale and resale of a property. The appraiser's files contain comparable sales and re-sales for several relatively current retail properties located throughout the tri-county area. One sold indicated a 5.53% annual increase while another sale increased by 9.9%.

The appraiser also discussed market conditions with a broker from Marcus Millichap. The broker indicated that market conditions have indeed increased since 2002. As rents have increased, capitalization rates have decreased as have equity dividend rates and equity yield rates. The broker cited a center in Dearborn that sold in Dearborn in 2002 for $10 Million. Approximately 2 ½ years later, this same center sold for $12.75 million for an increase of 11% per annum, non-compounded. The same tenants were in place and no physical changes were made to the real estate. Although one can not rely solely on one or several sale/re-sales as a barometer for increasing sale prices, the supply and demand trends appear to indicate continued upward increases in sale prices.

Marcus & Millichap in one of its prior Detroit retail reports projects sale prices to increase by over 6% and historic increases in neighborhood centers have posted large gains. The subject is in a saturated retail market that is considered to be in the stable phase of its neighborhood life cycle. Considering the preceding analysis, it is the appraiser's opinion that sale prices have increased at 5 to approximately 11% per annum since 2002. A rate of **5%** per annum is concluded. Adjustments are applied to those sales preceding current year (2006 sales) at about 5% per annum rounded by calendar year.

**Location** – The subject is in an excellent location being a highly visible corner property in a densely populated area with high traffic exposure. Sale 1 and 2 are in slightly inferior locations with lower traffic counts while Sales 3 and 4 are in similar locations.

71

No adjustments are applied to Sales 3 and 4, while slight upward adjustments are applied to Sales 1 and 2.

**Age and Condition** – The subject buildings are older having been constructed in 1936/1937 with some minimal remodeling in the 1960's and 1970's. Sales 1, 2, and 4 are overall similar in terms of effective age, while Sale 3 is slightly superior (lower effective age), based on the level of remodeling.

**Construction Quality** – All four buildings are average, class C construction comparable to the subject. No adjustment is necessary.

**Building size adjustments** – The sales range from 3,427 to 5,375 SF. The subject's size is 2,068 SF. Typically, smaller buildings sell for higher rates per square foot than larger buildings. However, the sales are all relatively smaller buildings and the appraiser was not able to discern sufficient market evidence that would justify a size adjustment except for Sale 2 which at 9,066 SF is significantly larger than the subject's size. This sale is adjusted upward slightly.

**Land-to-building ratios** range from 1.26 to 1.83:1. The subject is above the upper end at 5.80. The subject has a significant advantage in terms of expansion. In fact, the proposed building will be over twice the size of the existing structures. Considering this, it is likely that a premium would be paid for the subject site given its expansion potential. Considering this, each of the sales is adjusted upward by $5 PSF multiplied by the differences in land-to-building ratios. This reflects the land as surplus land instead of excess land that could be separated and have its own highest and best use.

The following sales adjustment grid reflects the adjustments discussed in this report.

Siegle & Associates, LLC

Siegle & Associates, LLC

## Sales Adjustment Grid

| | Subject | Sale 1 | | Sale 2 | | Sale 3 | | Sale 4 | |
|---|---|---|---|---|---|---|---|---|---|
| Address | 13033-13041 W. Warrem Dearborn | 7845 Wyoming Dearborn | | 6500-6512 Schaefer Dearborn | | 13901 Michigan Avenue Dearborn | | 15238-15242 W. Warren Dearborn | |
| Use | Retail | Retail | | Retail | | Retail | | Retail | |
| Land Area (net useable) | 12,000 | 12,000 | | 16,624 | | 5,600 | | 4,350 | |
| Occupancy at sale | | | | | | | | | |
| Sale Price | | $490,000 | | $700,000 | | $385,000 | | $500,000 | |
| Sale Date | | 10/9/2003 | | 4/2/2004 | | 1/21/2003 | | 8/13/2004 | |
| Square Feet | 2,068 | 5,375 | | 9,066 | | 4,428 | | 3,427 | |
| Sale Price/Square Foot | | $91.16 | | $77.21 | | $86.95 | | $145.90 | |
| | | | Adj. | | Adj. | | Adj. | | Adj. |
| Real Property Rights Conveyed | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | | Fee Simple | |
| Financing | Conventional | Conventional | | Conventional | | Conventional | | Conventional | |
| Conditions of Sale | Arm's Length | Arm's Length | | Arm's Length | | Arm's Length | | Arm's Length | |
| Market Conditions | | 10/9/2003 | 12.50% | 4/2/2004 | 10.00% | 1/21/2003 | 17.50% | 8/13/2004 | 10.00% |
| Cumulative Adjustments | | | $102.56 | | $84.93 | | $102.16 | | $160.49 |
| **Physical Adjustments** | | | | | | | | | |
| Location | W. Warren | Wyoming | 5.00% | Schaefer | 3.00% | Michigan | 0.00% | Michigan | 0.00% |
| Age & Condition | 1936 and 1937, remodeled | 1948 | 0.00% | 1950 | 0.00% | 1955/Superior condition | -5.00% | 1941 | 0.00% |
| Construction Quality | Average class C retail | Average class C retail | 0.00% | Average, class C retail | 0.00% | Average, class C retail | 0.00% | Average, class C retail | 0.00% |
| Building Size | 2,068 | 5,375 | 0.00% | 9,066 | 5.00% | 4,428 | 0.00% | 3,427 | 0.00% |
| Land-to-building ratio | 5.80 | 2.23 | 17.00% | 1.83 | 23.00% | 1.26 | 22.00% | 1.27 | 14.00% |
| Additive Adjustments | | | 22.00% | | 31.00% | | 17.00% | | 14.00% |
| Adjusted Price Per Unit | | | $125.12 | | $111.26 | | $119.53 | | $182.96 |

Siegle & Associates, LLC

After adjustments, sale prices range from $111.26 to $182.96 PSF. The average is $134.72 PSF. Little to no weight is placed on Sale 4, since it is so much out of the range relative to the remaining sales and other sales researched within Dearborn.

The remaining sales range from $111.26 to $125.12 PSF. It is the appraiser's opinion that a rate of $120 PSF is supported. Applying $120 PSF to the subject's size of 2,068 SF results in an opinion of market value of $248,160 or rounded to;

**$250,000**
**Two Hundred and Fifty Thousand Dollars**

# Sales Comparison Approach – When Complete

Principles involved in the sales comparison approach include supply and demand, substitution, balance, and externalities.

The general procedure in the sales comparison approach is as follows:

➢ Research the market for information on sale transactions, listings, pending sales, etc.
➢ Verify the information
➢ Select relevant units of comparison
➢ Compare the comparable properties to the subject and make adjustments for elements of comparison
➢ Reconcile the value indications into a single value or range of values

The following sales have been identified and are deemed most comparable to the subject after an extensive search. The scope of work involved an exhaustive search utilizing Co-Star Comps and Property for all of Wayne, Oakland, and Macomb County for newer, comparable buildings like the subject. Additional research involved a physical visit by an associate of the appraiser and the appraiser to the city of Dearborn. MIREALSOURCE and Realcomp online were also researched for sales data. The following sales are the best available.

Siegle & Associates, LLC