(SPACE BELOW FOR FILING STAMP ONLY)

ROGER T. NUTTALL #42500
NUTTALL & COLEMAN
2445 Capitol Street, Suite 150
FRESNO, CA 93721
PHONE (559) 233-2900
FAX (559) 485-3852

ATTORNEYS FOR Defendant
TALAL ALI CHAMMOUT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

* * * * * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TALAL ALI CHAMMOUT,<br><br>Defendant. | Case No. 1:06CR00426-OWW<br><br>**MOTION TO RELEASE PENDING SENTENCING**<br><br>[Title 18 U.S.C. § 3145]<br><br>Hrg. Date: August 2, 2007<br>Time: 9:00 a.m.<br>Dept.: Hon. OLIVER W. WANGER |

Defendant, Talal Ali Chammout (hereinafter "Chammout"), respectfully submits the following Memorandum of Points and Authorities in support of Defendant's Motion to Release Pending Sentencing (the "Motion").

## I.

## BACKGROUND

On or about December 2006, an indictment (the "Indictment") was filed by the United States of America, charging Mr. Chammout with the following violations: (1) Count One- Felon in Possession of Firearms, in violation of Title 18, United States Code, section 922 (g)(1); and (2) Count Two- Conspiracy to Possess Stolen Government Property, in violation of Title 18, United States Code, sections 371 and 641.

On or about June 5, 2007, Mr. Chammout entered into a plea agreement (the "Agreement") with the United States, in which Mr. Chammout entered a plea of guilty to Count One of Indictment (Felon in Possession of Firearms). Mr. Chammout is scheduled to be sentenced on August 27, 2007, before the Honorable OLIVER W. WANGER, of the United States District Court for the Eastern District of California.

## II.

## ARGUMENT

**A. This Court Has The Authority to Grant Mr. Chammout's Pre-Sentence Release**

An individual subject to detention under section 3143 (a)(2) may be released if (1) he meets the conditions set forth in section 3143 (a)(1), in other words, if he shows by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released; and (2) it is clearly shown that there are exceptional circumstances why such person's detention would not be appropriate. (United States v. Garcia 340 F.3d 1013 (9th Cir. 2003); United States v. Kaquatosh 252 F.Supp.2d 775 (E.D.Wis. 2003).)

Title 18 U.S.C. section 3145 (c) does not define exceptional circumstances, and the legislative history provides little assistance. (United States v. Kaquatosh 252 F. Supp.2d at p. 777; citing United States v. DiSomma 951 F.2d 494, 497 (2d Cir. 1991).) What constitutes exceptional reasons must be determined on a case-by-case basis. (UnitedStates v. Kaquatosh 252 F. Supp.2d at p. 777; citing United States v. Vallie, 2001 U.S. dist. Lexis 4713, at p. 13 (D.N.D. Apr. 12, 2001.) (emphasis added.)

It has also been determined that purely personal circumstances can provide a factual basis for release pending sentencing. (United States v. Kaquatosh 252 F. Supp.2d at p. 778.) (emphasis added.) The statute requires only that the court find that the defendant's situation is sufficiently unique to make detention pending sentencing inappropriate. (Ibid.) A court may make such a finding based on "legal" reason, "factual" reasons, or some combination of both. (Ibid.) There need only be some special reason or need for the defendant to be free on bond during the period of time between the finding of guilt and sentencing. (Ibid.)(emphasis added.)

///

In the instant matter, it is suggested that exceptional circumstances justify Mr. Chammout being released pre-sentencing for a reasonable period of time. First, according to a report which was completed by Dr. Miles Estner, a forensic psychiatrist, Mr. Chammout is an individual who is open to rehabilitation and, it is submitted, and who is willing to follow directions and the demands of any limited pre-sentence release. A copy of Dr. Estner's evaluation is attached hereto as Exhibit A.

Second, as the court may recall, Mr. Chammout is the owner of Truckers Oil Company. Since Mr. Chammout's incarceration, the business has essentially failed, and there are still outstanding debts owed to creditors, as well as monies owed to Truckers Oil Inc. In this regard, Mr. Chammout needs an opportunity to try and collect all outstanding debts and distribute whatever sums of money obtained to his creditors. A copy of Truckers Oil Inc.'s accounts payable and accounts receivable summary is attached hereto as Exhibit B. While Mr. Chammout's brother, Nasser Chammout, has attempted to handle the operations of Trucker's Oil Inc., it is clear that his attempts were ineffective as Nasser has been unable to keep the business running or collect money from Trucker Oil Inc.,'s existing debtors.

Third, Mr. Chammout desires the opportunity to spend time with his father, who is not in good health, prior to Mr. Chammout's continued incarceration. Mr. Chammout's father (Ali Chammout) is eighty two (82) years, and not in good health. Given his father's medical condition, this could possibly be Mr. Chammout's last opportunity to see his father. True and correct copies of Ali Chammout's medical records from his doctor, Mohammed A. Arman M.D., are attached hereto as Exhibit C.

Fourth, Mr. Chammout would like the opportunity to see his brother Ahmad Chammout who has been hospitalized in Michigan. Ahmad Chammout, Mr. Chammout's oldest brother, has suffered kidney failure and undergoing dialysis. As a result of his medical condition, Ahmad Chammout has lost both of his legs and one eye. In this regard, this also may be Mr. Chammout's last opportunity to see his brother prior to his release from federal custody. A copy of Ahmad Chammout's medical records including a correspondence from a Dr. Mohamed Khansa are attached hereto as Exhibit D.

///

Fifth, Mr. Chammout currently has matters pending litigation, a bankruptcy case, as well as a civil lawsuit. The civil matters will undoubtedly implicate the disposition of the equipment owned by Trucker's Oil Inc., and Mr. Chammout needs the opportunity to arrange for the disposition of this equipment in order to satisfy some of his outstanding obligations.

Sixth, Mr. Chammout wants the opportunity to see his children prior to his continued incarceration. Mr. Chammout has not seen his children since April, 2006, and would like the opportunity to have a third party visitation. Mr. Chammout has a twelve year old daughter, and two boys ages eight and six. In this regard, Mr. Chammout wants to have the opportunity to discuss his continued incarceration with his three children and the opportunity to explain to his children where their father will be for the next few years.

Seventh, Mr. Chammout greatly desires the opportunity to attend Nasser Chammout's daughter's wedding which will take place on July 28, 2007. Mr. Chammout would like the opportunity to be present at this event which is extremely important to the entire Chammout family. A true and correct copy evidencing that the wedding of Mr. Chammout's niece will take place on July 28, 2007, is attached hereto as Exhibit E.

The circumstances set forth above, while possibly "purely personal," set forth an appropriate factual basis for the Release Order. Mr. Chammout understands, that in the event this court grants his request his release, he will be subject to numerous conditions, including the use of an ankle monitor. Mr. Chammout is also willing to post property and security, including a $50,000.00 cash bond if the court deems it necessary.

The aforementioned cases indicate that pre-sentence release is not an anomaly. In fact, pre-sentence release orders are consistently granted based upon circumstances similar to those in the instant matter. Mr. Chammout's strong ties to the community, his desire to see his ill father and brother, issues with his children, and his commitment to assuring that the business dealings of Truckers Oil Inc., are resolved, warrant a finding that Mr. Chammout has established special circumstances justifying a limited and reasonable release order.

///

///

Accordingly, it is suggested that, this court should grant Mr. Chammout's request for a release order because the circumstances of the instant matter give rise to a special need for pre-sentence release.

### III.

### CONCLUSION

For the reasons set forth above, this court should grant the Motion and allow Mr. Chammout the opportunity to be released pre-sentence, since Mr. Chammout can establish exceptional circumstances giving rise to a special need for release.

DATED:  July 12, 2007.

Respectfully submitted,

NUTTALL & COLEMAN

/s/ Roger T. Nuttall

By:_____
ROGER T. NUTTALL
Attorneys for Defendant
TALAL ALI CHAMMOUT

# EXHIBIT "A"

# S. MILES ESTNER, MD
## FORENSIC PSYCHIATRY

**PO BOX 3318**
**SAN LUIS OBISPO, CA  93403-3318**

**FAX:     805.544.5506**
**PHONE:  805.234.2278**

June 11, 2007

Mr. Roger T. Nuttall
Attorney at Law
Nuttall & Coleman
2445 Capitol Street, #150
Fresno, CA 93721

**RE:**   Case 1:06CR00426-OWW
CHAMOUT, Talal Ali
Forensic Consultation
Hearing Date: Pending

Dear Mr. Nuttall,

This document is respectfully submitting following your request that I examine the Defendant and produce a written report of my findings.

**IDENTIFICATION:** Talal Chamout is a 48 year-old (born 1/1/59) long-time resident of Porterville, California, currently In Custody at the Fresno County Jail, charged in Federal Court with Felon in Possession of Firearms, and Conspiracy to Possess Stolen Government Property, for alleged events of June 1, 2004 – December 7, 2006. I examined Mr. Chamout at the Jail on Tuesday, March 20, 2007. Prior to the examination, I reviewed the provided materials, including the Indictment, Reports and Letters. At the outset of the examination, I explained the purpose for the examination and its relative lack of confidentiality. He agreed to proceed on that basis. With his permission, I subsequently interviewed brother, Nasser Chamout.

**LEGAL ISSUE:** Whether or not the Defendant's mental state pertains to the allegations.

**OPINION:** In my professional opinion, Talal Chamout's mental state DOES pertain to the allegations, with pertinent positives and negatives. He has a very trusting and open nature, and a somewhat desperate desire to be liked and to succeed and win favor of others, with corresponding vulnerability to boundary areas and manipulations. Absent are problems with drugs or alcohol or formal mental illness or psychopathic or antisocial traits, a 'bad' marriage notwithstanding. Mr. Chamout has very good prospects for rehabilitation under these circumstances. I hold these opinions for the following reasons.



Talal "Ted" Chamout is a 48 year-old long-time resident of Porterville, California, where he built up a Mini-Mart and Trucking Service with local and statewide business contacts. Mr. Chamout is a native of Southern Lebanon, but has lived in the United States since the 1980's, and he underwent a turbulent divorce from with a prior Felony conviction. Brother, Nasser, is a responsive individual residing in Fresno, California.

Mr. Chamout is alleged to have illegally possessed weapons and consped to obtain stolen government property of very disconcerting nature. Yet, Ted Chamout manifests no background to suggest the propensity for criminal, highly sophisticated weapons transactions or conspiracies.

He was born in South Lebanon, but has lived in this country since his 20's, and has demonstrated the ability to change environments and succeed in small business. People who have known him for over 20 years, as well as those who have known him personally and professionally for more than 10 years, and in his local community, and local newspaper, all speak well of him, as an honest, non-violent, generous man.

I emphasize 'generous' because I think it is a key to understanding how I see Mr. Chamout, bad marriage notwithstanding, as an honest, open, man with a somewhat desperate need to succeed, the latter being an Achilles Heel to boundary violations and manipulations.

Letters from business associates and personal friends describe Talal Chamout as a generous man, for friends, and even family of friends and innocent victims. I believe that Chamout's fundamental nature is good, but that his desire to win favor and succeed makes him vulnerable to negative influence.

Examining Mr. Chamout is being in the presence of a gentleman. He is clean, groomed, polite, and formal. His manners are distinctly respectful. He makes a good impression, despite his impoverished surroundings, even before trust or rapport of the interview are established.

Also, despite the seriousness of the charges, and additional general confidentiality concerns in a Correctional setting, Mr. Chamout is surprisingly easy to put at ease. Rapport develops quickly, and he speaks freely and freely offers permission and contact information for collateral contacts.

Absent are any risk factors for Sociopathy, including absence of juvenile delinquency, very limited adult criminal behavior in the emotional context of divorce and contested child custody, absence of problems with alcohol, drugs, gangs, no tattoos, no piercings, and obviously present respect for authority, broad acceptance of social values, intact family and friendships, despite being severely tested.

Also absent are any symptoms of major mental illness. No Depression, Mania, Psychosis, Mental or Physical Deficiency or Suicidality as would indicate instability or predisposition to rational or irrational violence.

Talal Chamout's examination in Jail, with his apparent success at maintaining his dignity even there, speaks to his ability to succeed in challenging environments. The ease with which he

2

established trust in this examination confirmed both his open, honest nature and a profound susceptibility to manipulation.

The totality of the information reviewed, with 2-page signed petition, letters from Law Enforcement, from an Officer of the Court, from personal and professional associates, and even public news, testify to Mr. Chamout's successful ability to win favor, not through criminal conduct or bad character or deviousness or violence or illegal conspiracies, but through acts of kindness and generosity and basic, fundamental honesty.

Open in his history of his life, as well, specifically regarding developments in Porterville, the pattern that emerges is not a manipulative criminal or sociopath, but rather an anxious man with some desperation to be liked and to make a good impression in order to succeed.

His qualities and tendencies in these regards, in my professional, forensic, psychiatric opinion, account for someone like Mr. Chamout being in circumstances like these.

**MENTAL STATUS EXAMINATION:** Talal Chamout is a cooperative, polite, fastidiously groomed Jail examinee.

His speech is soft but clear, and movements are normal, non-focal, neurologically. Some lower stiffness and need to ambulate after prolonged sitting.

Mood is okay. Affect is mildly depressed and anxious.

Thoughts are logical. No psychosis, mania or suicidality.

Intellectual function shows above average intelligence, and generally intact attention, memory and concentration, other than the stress of indictment and incarceration.

| DIAGNOSIS: | | |
|---|---|---|
| | Axis I. | No Major Mental Illness |
| | Axis II. | No Anti-Social Personality Disorder |
| | Axis III. | Medically Appropriate for Age |
| | Axis IV. | Commensurate Stressors |
| | Axis V. | GAF = 75 |

**SUMMARY:** In my professional opinion, Talal Chamout's mental state does pertain to the allegations against him.

He is an open, honest man who easily develops trust, with a somewhat desperate desire to make a good impression and to succeed, with a corresponding vulnerability to boundary areas and manipulation.

3

His qualities and tendencies in these regards, in my professional, forensic, psychiatric opinion, account for someone like Mr. Chamout being in circumstances like these. He is a very good candidate for rehabilitation, being demonstrably responsive to corrective rehabilitative experiences, and being innately open to suggestion, eager to please, and desirous of succeeding and improving.

Thank you for having requested my opinion in this matter. I hope that these efforts are helpful to the Court in its deliberations.

Sincerely,

S. Miles Estner, MD

# EXHIBIT "B"



TRUCKERS
OIL
COMPANY
INCORPORATED



# Fax

| | | | |
|---|---|---|---|
| **To:** | Roger Taylor Nuttall | **From:** | Truckers Oil Company Inc |
| **Fax:** | (559) 485-3852 | **Pages:** | 3 |
| **Phone:** | | **Date:** | 6/15/2007 |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**



11:46 AM

06/15/07

# Truckers Oil Company, Inc.
## A/P Aging Summary
### As of June 15, 2007

| | Current | 1 - 30 | 31 - 50 | 61 - 90 | > 90 | TOTAL |
|---|---|---|---|---|---|---|
| Department of Motor Vehicles - MCP | 0.00 | 0.00 | 0.00 | 0.00 | 35.00 | 35.00 |
| Federated Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 4,192.32 | 4,192.32 |
| Flying J (Big West Oil) | 0.00 | 0.00 | 0.00 | 0.00 | 41,564.84 | 41,564.84 |
| Global Drug Testing Services | 0.00 | 0.00 | 0.00 | 0.00 | 500.00 | 500.00 |
| Kern Oil & Refining Company | 0.00 | 0.00 | 0.00 | 0.00 | -3,794.90 | -3,794.90 |
| Lindmore Irrigation District | 0.00 | 0.00 | 0.00 | 0.00 | 115.50 | 115.50 |
| Livick Truck & Bus Repair | 0.00 | 0.00 | 0.00 | 0.00 | 127.07 | 127.07 |
| McKinley Scearcy Associates | 0.00 | 0.00 | 0.00 | 0.00 | 8,430.00 | 8,430.00 |
| Nextel | 0.00 | 0.00 | 0.00 | 0.00 | 396.60 | 396.60 |
| OPIS Energy Group | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 200.00 |
| Peter Chavez | 0.00 | 0.00 | 0.00 | 0.00 | 60.00 | 60.00 |
| Sparkletts Water | 0.00 | 0.00 | 0.00 | 0.00 | 165.44 | 165.44 |
| Tesoro Refining and Marketing Company | 0.00 | 0.00 | 0.00 | 0.00 | 285,615.24 | 285,615.24 |
| Tulare Firestone Tire & Service (TF) | 0.00 | 0.00 | 0.00 | 0.00 | 2,593.17 | 2,593.17 |
| Valero | 0.00 | 0.00 | 0.00 | 0.00 | 81,065.47 | 81,065.47 |
| **TOTAL** | 0.00 | 0.00 | 0.00 | 0.00 | 421,265.75 | 421,265.75 |

11:31 AM

06/15/07

## Truckers Oil Company, Inc.
## A/R Aging QuickZoom
### As of June 15, 2007

| Type | Date | Num | Name | Terms | Due Date | Open Balance |
|---|---|---|---|---|---|---|
| **Bartlett Trucking** | | | | | | |
| Invoice | 12/4/2006 | 08442 | Bartlett Trucking | Net 10 | 12/14/2006 | 3,773.93 |
| Invoice | 12/4/2006 | 08443 | Bartlett Trucking | Net 10 | 12/14/2006 | 2,722.57 |
| Total Bartlett Trucking | | | | | | 6,496.50 |
| **East Reedley Store** | | | | | | |
| General Journal | 9/14/2006 | | East Reedley Store | | | 87,659.87 |
| Total East Reedley Store | | | | | | 87,659.87 |
| **Ideal Mini Mart** | | | | | | |
| Invoice | 12/4/2006 | 08422 | Ideal Mini Mart | Net 7 | 12/11/2006 | 20,876.96 |
| Total Ideal Mini Mart | | | | | | 20,876.96 |
| **Save Center** | | | | | | |
| Invoice | 12/5/2006 | 08426 | Save Center | Net 7 | 12/12/2006 | 14,374.39 |
| Total Save Center | | | | | | 14,374.39 |
| **Truckers Mini Mart** | | | | | | |
| Invoice | 7/20/2006 | 7900 | Truckers Mini Mart | Net 7 | 7/27/2006 | 9,301.55 |
| Invoice | 7/25/2006 | 7914 | Truckers Mini Mart | Net 7 | 8/1/2006 | 6,055.35 |
| Invoice | 8/7/2006 | 7974 | Truckers Mini Mart | Net 7 | 8/14/2006 | 11,718.53 |
| Invoice | 8/7/2006 | 7980 | Truckers Mini Mart | Net 7 | 8/14/2006 | 5,286.58 |
| Total Truckers Mini Mart | | | | | | 32,362.01 |
| **Truckers Oil Company, Inc. Trucking** | | | | | | |
| Invoice | 10/20/2006 | 08246 | Truckers Oil Compa... | | 10/20/2006 | 8,923.88 |
| General Journal | 11/10/2006 | | Truckers Oil Compa... | | | -2,097.77 |
| Total Truckers Oil Company, Inc. Trucking | | | | | | 6,826.11 |
| **TOTAL** | | | | | | 168,595.84 |

# EXHIBIT "C"

## MOHAMMED A. ARMAN, M.D.
### GASTROENTEROLOGY, ERCP, HEPATOLOGY, DIAGNOSTIC AND THERAPEUTIC ENDOSCOPY
2040 MONROE-SUITE 207-DEARBORN, MI 48124
(313) 724-9170

NAME: Ali Elchammout

## GASTROSCOPY

### PREPARATION FOR YOUR PROCEDURE

DATE OF PROCEDURE: June 20, 2007

TIME OF PROCEDURE: 7:30 Am    Be there @ 5:30AM

INSTRUCTIONS:

YOU MAY HAVE NOTHING TO EAT OR DRINK AFTER MIDNIGHT THE NIGHT BEFORE THE PROCEDURE.

YOU MUST BE ACCOMPANIED BY A FRIEND OR RELATIVE TO DRIVE YOU HOME. NO DRIVING ENTIRE DAY OF PROCEDURE. REPORT AT THE OUTPATIENT AREA AT

# OAKWOOD HOSPITAL

NO BLOOD THINNERS FOR THREE DAYS BEFORE THE PROCEDURE, THIS INCLUDES COUMADIN, ASPIRIN, AND HEPARIN. NOTIFY OUR OFFICE IF YOU EVER NEEDED PRE-OP ANTIBIOTICS BEFORE SURGERY(FOR MITRAL VALVE PROLAPSE, JOINT REPLACEMENT OR STENT). ALSO NOTIFY OUR OFFICE IF YOU HAVE A PACEMAKER.

# OAKWOOD HEALTHCARE SYSTEM
## Oakwood Hospital and Medical Center

### OPERATIVE REPORT

| | | | |
|---|---|---|---|
| **NAME:** | ELCHAMMOUT, ALI | **MED REC #:** | 453876 |
| **FINANCIAL #:** | 712567916 | **ADMISSION DATE:** | 06/21/2007 |
| **ROOM #:** | 0630 - 01 | **DISCHARGE DATE:** | |
| **CPI:** | 07048986 | **DATE OF BIRTH:** | 06/15/1925 |
| **ATTENDING:** | MOHAMMED A ARMAN, MD | **PATIENT STATUS:** | IA |

**DATE OF SURGERY:** 06/21/2007

**SURGEON:** Mohammed Arman, MD

**PREOPERATIVE DIAGNOSIS(ES):** Obstructive jaundice.

**POSTOPERATIVE DIAGNOSIS(ES):**
1. Very dilated common bile duct.
2. The rest of the common bile duct is not more narrow. The distal 1-cm is more narrow than usual at present in comparison with the rest of the common bile duct.
3. The papilla is pushed down.
4. I did a sphincterotomy and the stone came in through.
5. The intrahepatic duct is dilated. Biopsy was obtained to ensure it is not cancer.

**OPERATIVE PROCEDURE(S):** Endoscopic retrograde cholangiopancreatography.

**ANESTHESIA:** Premedication as per Anesthesia.

**OPERATIVE PROCEDURE IN DETAIL:** The ERCP scope was advanced to the third part of duodenum and major papilla were identified. It is really pushed down like something pushing it down. I did a sphincterotomy which removed the stone. Then there was a black particle that came through with the sludge. I dilated with the balloon to around 15, I brought sludge from there. The stone was about 0.4 to 0.5 cm.

**ASSESSMENT:**
1. The intrahepatic duct shows no evidence of cancer. We intubated and dilated, but there is no definite cut-off. Multiple brushings were obtained.
2. I cannot exclude hepatic cancer; however, there is no hard evidence of that. Brushings were obtained.

**PLAN:**
1. Check cytology results.
2. Avoid NSAIDs for about 2-3 weeks since she has had a sphincterotomy.
3. She should be observed tonight after sphincterotomy.
4. We will do a CAT scan.
5. See Dr. Dakhallah.

_____
Mohammed Arman, MD

D: 06/21/2007 14:53:32
T: 06/21/2007 23:17:57
Job#: 79764
CC: Dr. Dakhallah

Copy For: Mohammed Arman, MD

Page 1 of 1



# Oakwood Hospital and Medical Center

## Department of Pathology

18101 Oakwood Blvd. P.O.Box 2500
Dearborn, MI 48123

Tel: 313-436-2369     Fax: 313-593-7143

## CYTOPATHOLOGY REPORT

| | | | | | |
|---|---|---|---|---|---|
| Patient Name: | **ELCHAMMOUT, ALI** | | | Accession #: | **OC07-990** |
| DOB: | 6/15/1925 (Age: 82) | Taken: | 6/21/2007 | Med. Rec. #: | 453876 |
| Gender: | M | Received: | 6/21/2007 | Financial #: | 000712567916 |
| | | Reported: | 6/22/2007 | Location: | 6SOU (OAK) |
| Physician(s): | Mohammed Arman, MD | | | Room/Bed: | 063001 |
| | | | | Other Data: | |

### Source of Specimen

Pancreatic duct brushing

### Final Cytologic Diagnosis

Pancreatic duct brushing:

Satisfactory for evaluation.

Air drying artifact.

### ***NEGATIVE FOR MALIGNANT CELLS***

Glandular/ductal cells present.

Sunghee S. Nam, M.D.
Cristy L. Campbell, CT(ASCP)
***Electronically Signed Out***

### Clinical History

**Clinical Diagnosis:**
CBD stone and rule out pancreatic cancer

### Gross Description

Pancreatic duct brushing:  2 slides received.

### Codes

A: 88104

Case 1:06-cr-00426-LJO Document 83 Filed 07/17/07 Page 19 of 27

Oakwood Hospital & Medical Center, Dearborn
**Radiological Report**

**PATIENT NAME:** ELCHAMMOUT, ALI

**Date of Examination:** Jun 22 2007 11:11AM

Patient Type: I
Date of Birth: 06/15/1925
Ordering Doctor: ARMAN, MOHAMMED
Attending Doctor: ARMAN, MOHAMMED
Referring Doctor: ,
Additional Copies To:

MED REC NUMBER: 0453876
RMS Order No.: 90002
Financial Number: 712567916
Pt. Room: -
Ordering Dr. No: 101675
Attending Dr. No: 101675
Sex: M

---

### ***Final Report***

```
Examination: OCB - 3108 - CT ABDOMEN W CONTRAST  - Acc: 6519295
RMS Order No: 90002  Jun 22 2007 11:11AM
INVISION Order No: 15 96052288-0001
CPT Code No: 74160
Reason for exam:     Abdominal Pain

RESULT:   181

HISTORY: Jaundice
COMPARISON: None.
```

Contiguous axial images of the abdomen and pelvis were obtained from the lung bases through the pubic symphysis following the uneventful administration of IV and oral contrast.

Limited images through the lung bases demonstrate bibasilar atelectasis. No effusion is seen.
At the level of the duodenum and pancreatic head, there is an approximately 4 cm soft tissue mass with associated edema. There is fluid around the first portion of the duodenum. There is no evidence of oral contrast extravasation.
There is pericholecystic fluid, and contrast material and air within the intrahepatic bile ducts and gallbladder, related to ERCP and placement biliary stent. The liver is otherwise unremarkable. The spleen, adrenal glands have an unremarkable CT appearance. An upper pole right renal cyst is noted. The left kidney is unremarkable. There is a distal abdominal aortic aneurysm, AP dimensions are 4.4 x 5.0 cm. There is no evidence of aneurysm rupture.

Examination of the bony structures demonstrates no evidence of lytic or sclerotic focus. Bilateral spondylolysis at L5 is noted.

IMPRESSION:
1. Retroperitoneal fluid of uncertain significance. Followup is recommended

Case 1:06-cr-00426-LJO     Document 33     Filed 07/17/07     Page 20 of 27

## Oakwood Hospital & Medical Center, Dearborn
### Radiological Report

**PATIENT NAME:** ELCHAMMOUT, ALI

**Date of Examination:** Jun 22 2007 11:11AM

**Patient Type:** I
**Date of Birth:** 06/15/1925
**Ordering Doctor:** ARMAN, MOHAMMED
**Attending Doctor:** ARMAN, MOHAMMED
**Referring Doctor:** ,
**Additional Copies To:**

**MED REC NUMBER:** 0453876

**RMS Order No.:** 90002
**Financial Number:** 712567916
**Pt. Room:** -
**Ordering Dr. No:** 101675
**Attending Dr. No:** 101675
**Sex:** M

---

to exclude duodenal perforation.
2. Pancreatic head mass with associated edema, suspicious for neoplasm
3. Distal abdominal aortic aneurysm.
3. Post biliary stent changes

Interpreted and dictated by: SHUMAKER,DANIEL (090365)   Jun 22 2007  2:57PM
Electronically signed by / Date:SHUMAKER, DANIEL (090365)  / Jun 23 2007  2:03AM

Transcribed by / Date:  N/A on Jun 22 2007  4:32PM
Edit Doctor:                Editing Time:
Edit Trans: N/A

Mnem: RESPWR
Rev: 22-Jul-03

Oakwood Healthcare System © 2003

Case 1:06-cr-00426-LJO    Document 33    Filed 07/17/07    Page 21 of 27

Oakwood Hospital & Medical Center, Dearborn
### Radiological Report

**PATIENT NAME:** ELCHAMMOUT, ALI

**Date of Examination:** Jun 22 2007 11:11AM

Patient Type: I
Date of Birth: 06/15/1925
Ordering Doctor: ARMAN, MOHAMMED
Attending Doctor: ARMAN, MOHAMMED
Referring Doctor: ,
Additional Copies To:

MED REC NUMBER: 0453876
RMS Order No.: 90004
Financial Number: 712567916
Pt. Room: -
Ordering Dr. No: 101675
Attending Dr. No: 101675
Sex: M

---

### ***Final Report***

```
Examination: OCB - 3116 - CT PELVIS W/CONTRAST  - Acc: 6519297
RMS Order No: 90004  Jun 22 2007 11:11AM
INVISION Order No: 17 96052300-0001
CPT Code No: 72193
Reason for exam:      Abdominal Pain

RESULT:    181

Please see report of CT abdomen same date and time

IMPRESSION:    181

Please see report of CT abdomen same date and time
```

---

Interpreted and dictated by: SHUMAKER,DANIEL (090365)   Jun 22 2007 4:32PM
Electronically signed by / Date:SHUMAKER, DANIEL (090365) / Jun 23 2007 2:03AM

Transcribed by / Date: N/A on Jun 22 2007 4:32PM
Edit Doctor:              Editing Time:
Edit Trans: N/A



ARMAN MD MOHAMMED
2040 MONROE
SUITE 207
DEARBORN, MI 48124

**Oakwood**
Laboratories

18101 Oakwood Blvd.
P.O.Box 2500
Dearborn, MI 48123-2500

1-800-245-3725

CAP NO. 17147-01
CLIA I.D. NO.

**LABORATORY DIRECTOR**

MICHAEL F. SCHALDENBRAND, M.D.
Pathologist

| PATIENT NAME | | PATIENT ID | DOB | SEX | STATUS | | DESTINATION |
|---|---|---|---|---|---|---|---|
| ELCHAMMOUT, ALI | | | 06/15/1925 | M | Final | | D10450 |
| PHYSICIAN | | COLLECT DATE & TIME | RECEIVED DATE & TIME | | REPORT DATE & TIME | | PAGE |
| ARMAN MD MOHAMMED, | | 06/18/2007 15:50 | 06/18/2007 22:45 | | 06/20/2007 09:23 | | 1 |
| REQUISITION NO. | OFFICE MR. NO | PATIENT PHONE NO. | COPY TO: | | | COPY TO: | |
| 10450.5690 | | 3135827608 | | | | | |

COMMENTS:

| Diagnostic Procedure | Result In Range | Out of Range | | Units | Reference Range | Site Code |
|---|---|---|---|---|---|---|
| CEA | | 5.0 | H | ng/mL | 0.0-3.0 | |
| Non-Smoker: 0.0-3.0 ng/mL | | | | | | |
| Smoker: 0.0-5.0 ng/mL | | | | | | |
| Fe/TIBC | | | | | | |
| Iron | 78 | | | mcg/dL | 35-150 | |
| Iron Binding Cap | 326 | | | mcg/dL | 252-461 | |
| % Iron Saturation | 24 | | | % | 13-48 | |
| Acute Hepatitis Prof | | | | | | |
| Hep B Core, (IgM) | Negative | | | | NEG | |
| Hep B Surface Ag | Negative | | | | NEG | |
| Hep C Ab | Negative | | | | NEG | |
| Hepatitis A Ab (IgM) | Negative | | | | NEG | |
| Sed.Rate, Westergren | | 38 | H | mm/hr | 0-20 | |
| Hemogram w/Platelets | | | | | | |
| White Blood Count | 4.3 | | | Thous/uL | 4.0-10.8 | |
| Red Blood Cell Count | 4.76 | | | Million/uL | 4.30-5.90 | |
| Hemoglobin | 14.4 | | | g/dL | 13.6-17.6 | |
| Hematocrit | 41.8 | | | % | 40.0-50.0 | |
| MCV | 87.8 | | | fL | 82.0-97.0 | |
| MCH | 30.3 | | | pg | 27.3-33.4 | |
| MCHC | 34.5 | | | g/dL | 33.0-36.0 | |
| RDW | | 14.9 | H | % | 11.6-14.8 | |
| Platelet Count | 201 | | | Thous/uL | 140-440 | |
| MPV | 10.0 | | | fL | 7.4-10.4 | |
| Differential | | | | | | |
| Differential Type | Automated | | | | | |
| % Neutrophils | 49.1 | | | % | 42.0-70.0 | |
| % Lymphocytes | 38.6 | | | % | 17.0-42.0 | |
| % Monocytes | 8.8 | | | % | 5.0-12.0 | |
| % Eosinophils | 3.2 | | | % | 0.0-6.0 | |
| % Basophils | 0.3 | | | % | 0.0-2.0 | |
| Abs Neutrophils | 2.1 | | | Thou/uL | 1.7-7.9 | |
| Abs Lymphocytes | 1.7 | | | Thou/uL | 0.6-4.5 | |
| Abs Monocytes | 0.4 | | | Thou/uL | 0.2-1.4 | |
| Abs Eosinophils | 0.1 | | | Thou/uL | 0.0-0.8 | |
| Abs Basophils | 0.0 | | | Thou/uL | 0.0-0.2 | |
| Prothrombin Time | 11.9 | | | seconds | 9.8-14.3 | |
| INR | 1.0 | | | | 0.8-1.2 | |
| INR Reference Ranges | | | | | | |
| No Anticoagulant 0.8-1.2 | | | | | | |
| Anticoagulation | | | | | | |
| Low Intensity: 2.0-3.0 | | | | | | |
| High Intensity: 2.5-3.5 | | | | | | |
| Daptomycin may falsely prolong Protime results | | | | | | |
| Cancer Antigen 19-9 | | 522.0 | H | U/mL | | WA |

Continued on next page

ELCHAMMOUT, ALI                          06/20/2007 09:23

D10450

ARMAN MD MOHAMMED
2040 MONROE
SUITE 207
DEARBORN, MI 48124



**Oakwood**
Laboratories

18101 Oakwood Blvd.
P.O.Box 2500
Dearborn, MI 48123-2500

1-800-245-3725

CAP NO. 17147-01
CLIA I.D. NO.

LABORATORY DIRECTOR

MICHAEL F. SCHALDENBRAND, M.D.
Pathologist

| PATIENT NAME | PATIENT ID | DOB | SEX | STATUS | | DESTINATION |
|---|---|---|---|---|---|---|
| ELCHAMMOUT, ALI | | 06/15/1925 | M | Final | | D10450 |

| PHYSICIAN | COLLECT DATE & TIME | RECEIVED DATE & TIME | REPORT DATE & TIME | PAGE |
|---|---|---|---|---|
| ARMAN MD MOHAMMED, | 06/18/2007 15:50 | 06/18/2007 22:45 | 06/20/2007 09:23 | 2 |

| REQUISITION NO. | OFFICE MR. NO | PATIENT PHONE NO. | COPY TO: | COPY TO: |
|---|---|---|---|---|
| 10450.5690 | | 3135827608 | | |

COMMENTS:

| | Result | | | | |
|---|---|---|---|---|---|
| Diagnostic Procedure | In Range | Out of Range | Units | Reference Range | Site Code |

Reference range: 0.0 to 35.0
(NOTE)
The Bayer Advia Centaur CA199 Chemiluminescent
Immunoassay is used. Results obtained with
different assay methods or kits cannot be used
interchangeably.

Performing Labs
WA          Warde Medical Laboratory    Ann Arbor, MI 48108    unless otherwise noted.

End of Report

ELCHAMMOUT, ALI                          06/20/2007 09:23                          D10450

# EXHIBIT "D"



**GREENFIELD MEDICAL CENTER**

**Mohamad Khansa**
M.D., M.P.H.
Internal Medicine-Board Certified
Medical Director

4953 Schaefer Rd., Suite 1
Dearborn, MI 48126

Tel 313.581.2121
Fax 313.581.9206

greenmedc@aol.com

June 21, 2007

RE;  Ahmad Chammout

Ahmed Chammout is a 61 year old male with history of
DM. HTN, Kidney failure and on dialysis 3 times a week.
Below knee amputation bilateral, patient is house bound and
in moderate severe sickness lately.

Thank you,

Dr. Mohamed Khansa M.D.

# EXHIBIT "E"

وَمِنْ آيَاتِهِ أَنْ خَلَقَ لَكُم مِّنْ أَنفُسِكُمْ أَزْوَاجًا
لِّتَسْكُنُوا إِلَيْهَا وَجَعَلَ بَيْنَكُم مَّوَدَّةً وَرَحْمَةً
صدق الله العظيم

الحاج نزار سعد وعائلته

و

السيد ناصر شموط وعائلته

يتشرفون بدعوتكم لحضور حفل زفاف، ولديهما

مصطفى ❤ زهراء

وذلك في تمام الساعة السادسة والنصف من مساء يوم السبت
الموافق ٢٨ ٧ ٢٠٠٧
في قاعة نادي بنت جبيل الثقافي الاجتماعي

دامت الأفراح في ديارككم عامرة     المرجاء عدم اصطحاب الأطفال

Mr. & Mrs. Nizar Saad

&

Mr. & Mrs. Nasser Chammout

request the honor of your presence

at the wedding reception of their children

Mustapha & Zahraa

on Saturday the 28th of July

Two thousand and seven

at six-thirty in the evening

Reception held at Bint Jebail Cultural Center

6220 Miller Road • Dearborn, MI 48126

No Children Please