(SPACE BELOW FOR FILING STAMP ONLY)

**ROGER T. NUTTALL #42500**
**NUTTALL & COLEMAN**
2445 Capitol Street, Suite 150
FRESNO, CA 93721
PHONE (559) 233-2900
FAX (559) 485-3852

ATTORNEYS FOR  Defendant
TALAL ALI CHAMMOUT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

\* \* \* \* \* \* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:06CR00426-OWW |
| Plaintiff, | **FORMAL OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT** |
| vs. | |
| TALAL ALI CHAMMOUT, | Hrg. Date: July 20, 2007 |
| Defendant. | Time: 9:00 a.m. Dept.: Hon. OLIVER W. WANGER |

TO: THE HONORABLE OLIVER W. WANGER, JUDGE OF THE ABOVE ENTITLED COURT, AND McGREGOR SCOTT, UNITED STATES ATTORNEY, BY AND THROUGH HIS REPRESENTATIVE, STAN BOONE, ASSISTANT UNITED STATES ATTORNEY:

Defendant, Talal Ali Chammout, by and through his attorney, Roger T. Nuttall, Nuttall & Coleman, formally objects to certain portions of the Presentence Investigation Report generated by United States Probation Officer, John R. Hatfield, on or about September 7, 2007.

**I.**

**INTRODUCTION**

On or about August 22, 2007, counsel for Mr. Chammout, submitted informal objections (the "Informal Objections") to the Presentence Investigation Report (the "Report") generated by United States Probation Officer, John R. Hatfield (the "Probation Officer"). In the Informal Objections, counsel for Mr. Chammout, objected to specific portions of the Report contending that

there were specific areas in the Report that needed clarification in order to more accurately reflect the circumstances of the instant matter.

On or about September 7, 2007, the Probation Officer sent a response to the Informal Objections. While certain changes to the Report were made, there are additional areas of concern that have yet to be corrected. Therefore, counsel for Mr. Chammout respectfully submits the following Formal Objections for the court's consideration.

**II.**

**OBJECTIONS**

**Objection No. 1:  Page 5, paragraph 12:**

In this paragraph, it is stated that, "[i]n September 2005, the CW contacted Chammout and they discussed obtaining rocket launchers." While this contention appears to be supported by the documentation contained in the discovery, specifically Bates Stamp No. 182, it is our position that the statement should be clarified to recognize the simple fact that at no time during the government's lengthy investigation did Mr. Chammout ever purchase a rocket launcher from the CW. Furthermore, it should be noted, in the Report that, Mr. Chammout never provided the CW with the funding necessary to make such a purchase.

Additionally, we are requesting that this paragraph be clarified or omitted from the Report because the inclusion of statements such as these in the Report, including the government's general conduct in this matter, amounted to *sentencing entrapment*, a practice shunned upon by the Ninth Circuit. United States v. Staufer, 38 F.3d 1103 (9th Cir. 1994); United States v. Garza-Juarez, 992 F.2d 896, 912-913 (9th Cir. 1994) [recognizing that government misconduct of an entrapping nature may warrant a downward departure.] In this regard, there are numerous paragraphs, including paragraph twelve in the Report that appear to have been used by Probation to justify the later request for an upward departure. As will be discussed throughout Mr. Chammout's Formal Objections, we believe, that the request for an upward departure is improper and that the paragraphs relied upon to justify the request should be omitted form the Report.

Therefore, we are respectfully suggesting that the court order Probation to clarify the Report in terms of a recognition that at no time did Mr. Chammout purchase Stinger missiles from the CW or, in the alternative delete paragraph twelve in its entirety from the Report.

**Objection No. 2. <u>Page 5, paragraph 13</u>:**

In this paragraph, Probation contends that Mr. Chammout desired to purchase a shoulder fired anti-tank weapon and have the weapon delivered to Iraq. Additionally, Probation contends that Mr. Chammout wanted to purchase an M16 rifle with a grenade launcher. While these claims are supported by the discovery, it seems that a more accurate rendition of the events would be to include in the Report that at <u>no</u> time during the government's lengthy investigation did Mr. Chammout purchase an anti-tank weapon or an M16 rifle from the CW.

In addition, and in order to accurately depict the circumstances leading to Mr. Chammout's arrest, the Report should be modified to recognize the fact that Mr. Chammout was not arrested until December 2006, fourteen (14) months after this conversation took place.

It is Mr. Chammout's position that the Report should recognize the above fact in order to provide the Court with a complete understanding of exactly when this conversation took place in relation to the date of arrest. This information will then allow the Court to determine if the government's actions in this matter amounted to a *sentencing entrapment*, a practice shunned upon by the Ninth Circuit. <u>United States v. Staufer</u>, 38 F.3d 1103 (9th Cir. 1994); <u>United States v. Garza-Juarez</u>, 992 F.2d 896, 912-913 (9th Cir. 1994) [recognizing that government misconduct of an entrapping nature may warrant a downward departure]. The Court's ability to make this determination is especially critical considering the fact that Probation has requested, what appears to be, an unwarranted request for an upward departure from the sentencing guidelines.

Therefore, it is respectfully suggested that the Probation Report be modified so as to recognize that at <u>no</u> time did Mr. Chammout purchase a shoulder fired anti-tank weapon or M16 despite the fact that fourteen (14) months had passed between the date of this conversation and Mr. Chammout's arrest.

**Objection No. 3. <u>Page 5, paragraph 14</u>:**

In this paragraph, Probation mentions that conversations took place between the CW and Mr. Chammout relating to anti-tank weapons. However, Probation, again fails to acknowledge the fact that at <u>no</u> time did Mr. Chammout purchase an anti-tank weapon from the CW or that this conversation took place nearly fourteen (14) months prior to Mr. Chammout's December 2006, arrest.

It is our position that the Report should be modified to acknowledge that Mr. Chammout did not purchase an anti-tank weapon from the CW or, at anytime, provide the CW with the funding necessary to purchase a single anti-tank weapon.   The requested changes are critical to Mr. Chammout in order to provide the court with a more balanced and accurate understanding of the events which took place and the time-line over which these events transpired in order to provide the court with sufficient information to determine if the government's actions, in the instant matter, amounted to sentencing entrapment.  United States v. Staufer, 38 F.3d at 1103; United States v. Garza-Juarez, 992 F.2d at 912-913 [recognizing that government misconduct of an entrapping nature may warrant a downward departure].

Therefore, it is respectfully suggested that paragraph fourteen(14) of the Probation Report be clarified to recognize the fact that at no time, over the course of the government's lengthy investigation, did Mr. Chammout purchase an anti-tank weapon.

**Objections 4.  Page 6, paragraph 19:**

In this paragraph, Probation contends that, "[i]n May 2006, Chammout asked the CW about meeting with "Vinnie," the UCO who posed as a contract killer."  It is our position that this paragraph should be modified to acknowledge that Mr. Chammout did not, at anytime, hire the UCO who posed as a contract killer for any purpose.

This request is reasonable given that the Report, as written, includes claims which never amounted to anything more than "loose" talk between the government agents and Mr. Chammout. Paragraph nineteen (19) appears to be included in the Report, without mention that the "contract killer" was never hired for any purpose, solely to provide Probation with additional information to justify the request for an upward departure.

Accordingly, it is respectfully suggested that the Probation Report be modified to clarify the fact that Mr. Chammout did not hire the UCO, who posed as a contract killer, or in the alternative omit the paragraph from the Report in its entirety.

**Objection No. 5.  Page 11, paragraphs 44, 45, 46:**

In paragraphs 44, 45, and 46, Probation references the facts contained in the court file relating to Mr. Chammout's October 18, 1994, arrest. While we recognize that Mr. Chammout was

ultimately convicted of Counts Two, Three, and Six, it appears, from our point of view, that Probation has included the facts claimed in paragraphs 44, 45, and 46, as a further attempt to justify the request for an upward departure. In this regard, it is our position that the references to the facts contained in the court file should be omitted in order to ensure that Mr. Chammout is not unduly prejudiced by an unfortunate incident which occurred nearly twelve (12) years ago.

Therefore, it is respectfully suggested that paragraphs 44, 45, and 46 be omitted from the Report.

**Objections No. 6.  <u>Page 11, paragraph 48</u>:**

In paragraph 48, Probation appears to make unwarranted inferences based upon Mr. Chammout's activities in Michigan in an attempt to portray Mr. Chammout in a false light. As a preliminary matter, it must be noted that a sentence cannot be based upon material inferences and assumptions that are unreasonable and unsupported. <u>United States v. Safirstein</u>, 827 F.2d 1380 (9th Cir. 1987.)

It is improper for Probation to conclude, in the Report, that Mr. Chammout traveled to Michigan for an unlawful purpose. Such a claim is based upon nothing more than speculation, and as such, is improper. In this regard, there is no indication in the Report, or in the discovery, that Mr. Chammout entered the residence with the intent of causing any harm to his ex-wife. In fact, it is our position that Mr. Chammout's entrance into the residence was not criminal in nature and that our position is bolstered by the fact that Mr. Chammout was ultimately allowed to enroll in a one (1) year diversion program.

Therefore, it is respectfully suggested that the Report be corrected to reflect only facts known to be true to ensure that Mr. Chammout is not further prejudiced.

**Objection No. 7.  <u>Page 16, paragraph 72</u>:**

In this paragraph, Probation has requested that the Court grant an upward departure based upon the claim that Mr. Chammout's plea agreement does not take into account the conversations Mr. Chammout had with a CW regarding the purchase of shoulder fired anti-tank weapons, as well as Stinger missiles. Probation appears to contend that the Court should consider these allegations in granting an upward departure pursuant to USSG 5K2.21, which provides:

"The court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or the underlying potential charge not pursued in the case as part of a plea agreement or for any other reasons; and (2) that did not enter into the determination of the applicable guideline range."

Probation's request for an upward departure based upon this alleged conduct is improper. First, as has been set forth above, there is no evidence to establish that Mr. Chammout ever purchased or provided the CW with the funding necessary to purchase aan anti-tank weapon or Stinger missile. While there were conversations over the course of the government's lengthy investigation, the fact of the matter is that any talk about anti-tank weapons or Stinger missiles was just that, talk. In this regard, Probation should not attempt to justify a request for an upward departure based upon conduct which, arguably, was not criminal.

In an attempt to further support the defense position regarding the fact that Mr. Chammout's discussions relating to the purchase of anti-tank weapons or Stinger missiles should not be considered in the request for an upward departure, the defense will offer, at sentencing, the written opinion of Dr. Miles Estner as such relates to Mr. Chammout's behavior.

Accordingly, it is respectfully suggested that paragraph seventy-two (72) be omitted from the Report, including any request for an upward departure.

**Objection No. 8. <u>Page 16, paragraph 73</u>:**

In this paragraph, Probation attempts to further justify the request for an upward departure base upon Mr. Chammout's alleged efforts to hire a contract killer to assassinate his ex-wife and Mr. Chammout's arrest in Michigan. As was set forth above in Formal objection No. 4, this paragraph should be omitted from the Report given that Mr. Chammout, at no time, hired the Undercover Officer who was posing as a "contract killer." Similar to the allegations relating to the purchase of anti-tank weapons or Stinger missiles, there is not indication that these discussion were anything more than "loose" talk.

In addition, there is no indication that this conduct was an underlying factor in any charge dismissed by the government, or that Mr. Chammout's conversations with the "contract killer" were chargeable offenses. As such, it is our position that Probation was not entitled to rely upon such claims in requesting an upward departure pursuant to USSG 5K2.21.

Therefore, it is respectfully suggested that paragraph seventy-three (73) be omitted from the Report and the request for and upward departure.

**Objection No. 9.  Page 16, paragraph74:**

In this paragraph, Probation requests the court to consider the fact that Count Two, charging the defendant with Conspiracy to Possess Stolen Government Property, while dismissed as part of the plea agreement, be considered for the purpose of an upward departure.

This request is unreasonable given the circumstances relating to the dismissal of Count Two, including the basis for the charge, in the first instance.  Mr. Chammout was charged with Conspiracy to Possess Stolen Government Property as a result of the purchase of military items including boots, other innocuous items, and the purchase of five beretta handguns.  The beretta handguns were the only items actually purchased which could not be characterized as innocuous.  However, the purchase of these handguns has already been included in the sentencing range considering that Mr. Chammout's base level offense was increased six levels pursuant to USSG 2k2.1 (b)(1)(c), because Mr. Chammout possessed more than 25 but less than 99 firearms.

Therefore, it is respectfully requested that the court order Probation to delete paragraph seventy-four (74) from the Report, or modify the Report to reflect the actual items Mr. Chammout purchased in order to provide the court with a complete understanding of the innocuous nature of these items.

**III.**

**CONCLUSION**

For the reasons set forth above, it is respectfully suggested that the Report be modified to more accurately reflect Mr. Chammout's life, as well as the true extent of his involvement in the instant matter.

DATED: September 12, 2007

\S\
ROGER T. NUTTALL
Attorney for Defendant