**ROGER T. NUTTALL #42500**
**NUTTALL & COLEMAN**
2445 Capitol Street, Suite 150
FRESNO, CA 93721
PHONE (559) 233-2900
FAX (559) 485-3852

ATTORNEYS FOR  Defendant
TALAL ALI CHAMMOUT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

\* \* \* \* \* \* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:06CR00426-OWW |
| Plaintiff, | |
| | SENTENCING REPORT |
| vs. | |
| TALAL ALI CHAMMOUT, | Hrg. Date: September 17, 2007 |
| Defendant. | Time: 1:30 p.m. |
| | Dept.: Hon. OLIVER W. WANGER |

TO: THE HONORABLE OLIVER W. WANGER, JUDGE OF THE ABOVE ENTITLED COURT, AND McGREGOR SCOTT, UNITED STATES ATTORNEY, BY AND THROUGH HIS REPRESENTATIVE, STAN BOONE, ASSISTANT UNITED STATES ATTORNEY:

On September 17, 2007, before this Honorable Court, Talal Ali Chammout and his family will be present in support of their hope, and that of their counsel, that the court shall see fit to afford Mr. Chammout a sentence that shall allow him to re-build his life, with his family, here in America.

Talal Ali Chammout was born in Lebanon on January 1, 1959. At the age of fourteen Mr. Chammout left the country of Lebanon with his family. The Chammout family moved to Liberia (in Africa) where Mr. Chammout attended the American Community School. Thereafter, he worked at a United States Air Force base in Liberia. The family then proceeded to immigrate to the United States where his family resided in the city of Dearborn, Michigan.

///

Mr. Chammout initially worked for the city of Dearborn in their parks division. Thereafter, with his brother, they bought a convenience store. After learning of the prospect of the sale of a truck stop in California Mr. Chammout left Dearborn to purchase, and ultimately operate Truckers Oil located in Porterville, California.

Beginning on or around February 2005, and continuing to December 2006, the government targeted Mr. Chammout for investigation. While the government has consistently, without a sufficient factual basis, contended that Mr. Chammout is engaged in so-called "terrorist" activities, the government, to date, has failed to produce any concrete evidence that over the course of their lengthy, nearly two year investigation, Mr. Chammout engaged in any "terrorist" acts. In fact, the results of the government's lengthy two (2) year investigation established that on a few isolated occasions Mr. Chammout purchased innocuous items including boots, which were represented to have been obtained from a military base. Finally, after investigating Mr. Chammout for nearly two (2) years without incident, Mr. Chammout regrettably succumbed to the government's advances and purchased five (5) beretta pistols.

By way of history, Talal Ali Chammout has consistently denied the so-called ties to terrorism which have unfortunately prejudiced Mr. Chammout since the commencement of the instant prosecution. Mr. Chammout, while entering into the plea agreement, thereby accepting responsibility for the purchases and possession of firearms, does not deserve to be extraordinarily or unfairly prejudiced, based upon the fact of the dismissed count and the terrorist overtones as alleged by the government. In stating this, counsel acknowledges that there exists a guideline range of sixty-three to seventy-eight months. The recommendation, however, that the court grant an upward departure and sentence Mr. Chammout to ninety-seven months in custody is both unreasonable and unwarranted. In fact, counsel for Mr. Chammout respectfully suggests that the circumstances which led to this incident, including the fact that the government focused an investigation on Mr. Chammout for nearly two years which led to nothing more than "loose" talk with the exception of the purchase of five (5) firearms, warrants the court granting a downward departure or, at most, a sentence of sixty-three months.

///

The fact of the matter is that Mr. Chammout has already spent nearly ten (10) months in custody, and as counsel understands, Mr. Chammout has been a model prisoner. Counsel's sincere position would be that the court grant Mr. Chammout a five level downward departure and impose a sentence between thirty-seven and forty-six months.

In stating this, Mr. Chammout, his family, and children, deserve the opportunity to be able to move ahead with their lives. Mr. Chammout loves his children and is a proud businessman who has the upmost respect for his home, America.

Counsel recognizes that there are a few areas of concern relating to the government's allegations which need to be addressed. Each of these areas will be addressed below.

First, counsel recognizes there appears to be a dispute over an incident which took place in Lebanon on or about July 18, 2004. In this regard, counsel submits the findings from Hassan Shahrour, Investigative Judge at the South. Mr. Shahrour's findings were translated by Muhannad F. Haimour, of the Arab American Language Institute. A copy of the translated findings are attached hereto as Exhibit A.

Based upon Mr. Shahrour's investigation, it was determined that the charges against Mr. Chammout should be dismissed for lack of evidence. Notably, Mr. Chammout adamantly denied the allegations, and Mr. Shahrours was unable to verify the claims made by Mr. Chammout's wife.

Therefore, counsel for Mr. Chammout respectfully suggests that the court not consider the circumstances relating to this incident in sentencing Mr. Chammout as Mr. Chammout has been absolved by the Lebanese government of any wrongdoing.

Next, there continues to be allegations made by the government relating to Mr. Chammout's alleged terrorist ties. While many of the issues regarding Mr. Chammout's terrorist ties were addressed in Mr. Chammout's Formal Objections to the Pre-Sentence Investigation Report, there are a few other points counsel needs to clarify. In this regard, counsel wants to be clear that at no time during the government's lengthy investigation of Mr. Chammout was the government able to verify that Mr. Chammout had any actual ties to terrorism in the Middle East. Notwithstanding, the government continues to focus on the allegation that Mr. Chammout attempted to purchase stinger missiles and that he had ties to terrorism in the Middle East. The government continues to make this claim despite the absence of any evidence to establish that Mr. Chammout, at anytime,

over the lengthy two year investigation purchased a stinger missile or even provided the government with the funding necessary to purchase a stinger missile.  Additionally, the government has failed to provide any evidence which would establish a link between Mr. Chammout and terrorist elements.  Mr. Chammout, through counsel, contends that the government's unsupported claims are nothing more than an attempt to prejudice Mr. Chammout, and thereby justify the lengthy and unreasonable investigation.

As such, it is respectfully suggested that this court should not consider a claim that Mr. Chammout is involved in terrorist activities, at the time of sentencing.

Finally, counsel for Mr. Chammout believes it to be imperative that the allegation surrounding Mr. Chammout's alleged attempt to hire a so-called "hit-man" be clarified.  As a preliminary matter, it must be noted that at no time did Mr. Chammout in fact hire the so-called "hit-man" or "contract killer" for any purpose.  The government's contentions otherwise surround nothing more than claims that on a few instances Mr. Chammout engaged in "loose" talk with the government agents.

Mr. Chammout's position that the government's contention are unsupported is only bolstered upon a review of the discovery provided in the instant matter.  Specifically, the discovery establishes that beginning on or about February 25, 2005, the government arranged a contact between the alleged "contract killer" and Mr. Chammout.  Over the course of the next fifteen (15) months Mr. Chammout had a few conversations with the undercover agent relating to the alleged "contract killer."  Notably, the government, not Mr. Chammout initiated the majority of the talks regarding the alleged "contract killer."  In fact, on or about May 26, 2006, the undercover agent informed Mr. Chammout that if he wanted to use the alleged "contract killer's" services he would need to contact this individual soon.  According to the discovery produced by the government Mr. Chammout did not contact the alleged "contract killer."  However, on or about September 5, 2006, (nearly eighteen months after the initial conversation) the discovery provided by the government indicates that the alleged "contract killer" was upset because Mr. Chammout did not go through with the meeting.  The discovery provided by the government also indicates that on or about September 25, 2006, Mr. Chammout was informed that the alleged "contract killer" was attempting to contact him.  In response, Mr. Chammout informed the government agent that he was too busy to speak with this

4

alleged "contract killer."

While counsel recognizes that, according to the discovery, there are indications that Mr. Chammout did initiate conversations with the government agent relating to the alleged "contract killer," the clear and simple fact of the matter is that over the course of twenty months, Mr. Chammout did not hire the alleged "contract killer" for any purpose. Furthermore, it is counsel's position that the alleged the government's persistence in arranging meetings between Mr. Chammout and the alleged "contract killer" was the sole cause of the discussions.

Therefore, counsel for Mr. Chammout respectfully suggests that the court should not consider the allegation that Mr. Chammout attempted to hire the alleged "contract killer," at sentencing in the instant matter.

In conclusion, it is respectfully submitted, pursuant to the mandates of Title 18 of the United States Code section 3553, that the court impose a sentence of no more than thirty-seven to forty-six months. Counsel submits that such a sentence would be proper and fair given all attendant circumstances, including the government's actions in conducting the nearly two year investigation that assisted in devastating Mr. Chammout's livelihood and family.

Lastly, attached please find letters in support of Mr. Chammout as follows:

A.    Steven A. Silver dated January 5, 2007 (Exhibit B);

B.    Pastor Dale R. Seaman dated February 9, 2007 (Exhibit C);

C.    Dr. S. Miles Estner dated June 11, 2007 (Exhibit D).

In conclusion, Mr. Chammout, together with his family, submit this matter to the wisdom and fairness of this Honorable Court, trusting that the court shall seek to resolve this case in a manner which is fair and just under all attendant circumstances.

DATED: September 14, 2007

By:   /s/ Roger T. Nuttall
ROGER T. NUTTALL
Attorney for Defendant